

Dated: September 28th, 2021

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## IN CHARLESTON

| IN RE: | CASE NO. 2:17-bk-20290 |
|---|---|
| TERRY KEVIN HUFF and PATRICIA SHERRY LEA HUFF, | CHAPTER 13 |
| Debtors. | JUDGE B. MCKAY MIGNAULT |
| TERRY KEVIN HUFF and PATRICIA SHERRY LEA HUFF, | ADVERSARY PROCEEDING NO. 2:17-ap-2014 |
| Plaintiffs, | |
| v. | |
| 21st MORTGAGE CORPORATION, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Pending is Defendant 21st Mortgage Corporation's ("21st Mortgage") Motion to Dismiss or in the Alternative Motion for Summary Judgment [dckt. 35], filed on April 13, 2020. On May 4, 2020, Plaintiffs Terry and Patricia Huff filed their Memorandum in Opposition to Defendant's Motion to Dismiss [dckt. 36]. 21st Mortgage filed its Reply [dckt. 37] on May 12, 2020. After some discovery had taken place, 21st Mortgage filed its Motion to Permit Filing of Supplemental Memorandum of Law on January 8, 2021 [dckt. 45]. On January 20, 2021, the Huffs filed their Response [dckt. 47]. A hearing was held on January 21, 2021, at which the Court inquired about potential mediation in this case. The Court continued the Motion to Dismiss for thirty (30) days to allow the parties to consider alternative dispute resolution. At the continued

hearing on February 25, 2021, upon hearing that the parties did not think they would be able to reach an agreement via mediation, the Court took this matter under advisement. Both parties have stated on the record that they stand on their pleadings, and, thus, this matter is ripe and ready for adjudication.

## I.

**A.    Factual and Procedural Background**

In 2007, the Huffs began discussions with a Clayton manufactured home dealer about the purchase of a double-wide manufactured home for use as a family residence. Compl. 3. The manufactured home was to be placed upon real property located at 9033 U.S. Route 52, Varney, West Virginia. *Id.* That real property was also secured by a Deed of Trust in favor of 21st Mortgage. *Id.* The Clayton dealer convinced the Huffs to arrange financing with 21st Mortgage, as the dealer had a history of working with 21st Mortgage to provide financing for interested buyers. *Id.* This was due to the fact that the Clayton dealer was not licensed to act as a broker or to arrange mortgage loans on residential real estate located in West Virginia. *Id.* The Huffs allege in their Complaint that they "were told that 21st had approved their financing at a 12% interest rate," and that 21st Mortgage was offering them its "best interest rate" when they expressed their concern at the high rate. *Id.* The Complaint alleges that, after contractually committing to purchasing the manufactured home with the 12% rate, the Huffs were told that 21st Mortgage would not finance the manufactured home they had chosen, so they had to select an alternative manufactured home of "a different size, with lower grade amenities, but at higher cost." *Id.* at 3–4.

21st Mortgage states in its Memorandum in Support of Motion to Dismiss that the

Huffs entered into a written contract in September of 2007 and subsequently closed on the loan and manufactured home purchase on December 1, 2007. Mem. Supp. Mot. Dismiss 3. At closing, the Huffs signed a number of written documents setting forth the agreement between the parties and establishing the terms of the loan. *Id.* According to the Huffs, the documents were presented to them "quickly, one after another, and then taken back," and they were simply told to "sign or initial where the closer pointed . . . ." Compl. 4.

Pursuant to the installment contract executed by the parties, the Huffs financed $59,123.10 for 240 months with a monthly payment of $700.86 starting January 1, 2008, and an annual percentage rate of 12.5%. Mem. Supp. Mot. Dismiss 4. 21st Mortgage insists that the Huffs signed a Good Faith Estimate at the closing which stated that the interest rate was 12.5%, and it attached a copy of the Installment Contract and Security Agreement as Exhibit A to its Memorandum in Support of Motion to Dismiss. *Id.* The Huffs contend that they were "unsophisticated consumers who lacked the assistance of counsel and any prior experience with a mortgage loan transaction" and that they "did not understand the contents, significance, or import of the documents that were presented at closing, nor were the terms of the many documents presented for signature explained in a fashion they could understand." Compl. 4. They assert that they did not learn until sometime later that 21st Mortgage had increased the interest rate from 12% to 12.5% and that the lender had not informed them of the change. *Id.*

The Huffs allege in their Complaint that it was not until April of 2017 that they consulted counsel and discovered the factual elements that gave rise to a cause of action against 21st Mortgage for fraud, violation of W. Va. Code § 31-17-8, violation of W. Va. Code § 46A-3, and violation of W. Va. Code § 46A-2-121. *Id.* They allege that 21st Mortgage prevented them from unearthing these facts by engaging in "intentional obfuscation and suppression of truths about

3

the transaction . . . ." *Id.* The Complaint also alleges that 21st Mortgage was charging late fees within the contractual grace period, and that it had collected more than one late fee for missed or late payments. *Id.* at 5.

The Huffs filed a petition for relief under Chapter 13 on May 24, 2017, and they filed the instant adversary proceeding on June 30, 2017. 21st Mortgage filed a Motion to Dismiss [dckt. 4] and supporting Memorandum [dckt. 5], as well as its Answer [dckt. 6] on July 28, 2017. The Huffs filed their Response [dckt. 7] on August 18, 2017, and 21st Mortgage filed a Reply [dckt. 8] on August 25, 2017. On December 8, 2017, the parties jointly filed a Motion [dckt. 16] to stay the adversary proceeding for ninety (90) days pending the outcome of the confirmation hearing in the main case. The Motion indicated that "the parties have worked cooperatively in exchanging the relevant documents, records, and information relating to the Plaintiffs' claim." The Order Granting the Motion to Stay [dckt. 19] was entered on December 20, 2017.

On March 23, 2018, the parties jointly filed another Motion to Stay [dckt. 21] because confirmation of the Huffs' Chapter 13 Plan was still under review in the main case. The second Motion to Stay was granted via Order [dckt. 23] entered March 26, 2018. This Order also denied 21st Mortgage's initial Motion to Dismiss, and it required the parties to advise the Court of the status of the case following the conclusion of the requested stay.

On August 30, 2018, a status hearing was held, at which the Court decided to retire the adversary proceeding to the inactive docket based on events in the main case. Specifically, the Huffs had appealed a crucial valuation determination made by this Court, and the appeal was still pending at the time of the status hearing. On February 15, 2019, an Order Staying Adversary Proceeding [dckt. 30] was entered. The appeal was remanded to this Court on August 21, 2019, based on a small factual discrepancy. On October 11, 2019, this Court entered an order correcting

4

the discrepancy.

Meanwhile, in the main case, the Chapter 13 Trustee's Second Motion to Dismiss Case for Failure to Make Plan Payments was granted via Order entered January 19, 2020. Subsequently, in the adversary proceeding, 21st Mortgage moved again for dismissal [dckt. 35] on April 13, 2020. Thereafter, the parties responded to one another with regard to the new Motion to Dismiss, and some discovery took place, including 21st Mortgage deposing both of the Huffs. A status hearing on the case was held on January 21, 2021, which was continued for thirty (30) days for the parties to file an up-to-date status report. Following the continued hearing held on February 25, 2021, the Court took 21st Mortgage's Motion to Dismiss [dckt. 35] under advisement.

**B.    Summary of Arguments**

In its Motion to Dismiss, 21st Mortgage argues that this Court should dismiss the adversary proceeding because, while dismissal of an underlying bankruptcy case does not mandate dismissal of all pending adversary proceedings, it should still use its discretion to dismiss this case. 21st Mortgage argues that judicial economy, fairness, convenience to the parties, and comity considerations all favor dismissal. 21st Mortgage asserts that, even if this Court chooses to exercise its discretion by retaining jurisdiction, it should nevertheless dismiss the West Virginia state law counts due to the Huffs' failure to timely file their Complaint pursuant to the applicable statute of limitations. Importantly, 21st Mortgage requests that dismissal be granted *with prejudice*.

The Huffs argue that this Court should retain jurisdiction and allow their claims to proceed. Acknowledging that retention of jurisdiction is discretionary and citing relevant authority, the Huffs contend that the matter remains properly before this Court and that the parties

5

are positioned to continue before this forum. The Huffs argue that convenience to the parties weighs slightly in favor of retention because dismissal would result in refiling in another court. The Huffs concede that fairness does not point toward retention or dismissal "[a]s long as this Court renders a jurisdictional decision that does not bar refiling." With regard to comity, the Huffs contend that it weighs in favor of retaining jurisdiction due to this Court's familiarity with issues arising under the West Virginia Consumer Claims and Protection Act ("WVCCPA"). Furthermore, and in the alternative, the Huffs aver that the "discovery rule" would apply to toll any applicable statute of limitations, rendering their filing timely.

## II.

**A.    Legal Standards**

"'[L]ike all federal courts, bankruptcy courts have limited jurisdiction.'" *Ratliff v. U.S. Dept. of Educ., et al. (In re Ratliff)*, No. 2:19-ap-02016, 2021 WL 3868512, at *4 (Bankr. S.D.W. Va. Aug. 27, 2021) (citing *Houck v. Lifestore Bank Substitute Trustee Servs., Inc.*, 582 B.R. 138, 140 (Bankr. W.D.N.C. 2018) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995))). "[T]here are three types of proceedings over which bankruptcy courts have jurisdiction: those 'arising under,' 'arising in,' and 'related to' cases under Title 11." *Id.* (citing *Houck*, 582 B.R. at 151)*; see also* 28 U.S.C. § 1334(b). With respect to the third category, or matters "related to" cases under Title 11, the Fourth Circuit employs the *Pacor* test in determining whether bankruptcy court jurisdiction is appropriate. *Ratliff* at *4. "The *Pacor* test examines 'whether the outcome of [a] proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *Id.* (citing *Houck* at 152 (quoting *Pacor v. Higgins (In re Pacor),* 743 F.2d 984, 994 (3d Cir. 1984))). "[A]n action is 'related to' in bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and in which any

6

way impacts upon the handling and administration of the bankrupt estate." *Id.* (internal citations and quotation marks omitted). Because state law causes of action are neither "arising under" nor "arising in" claims, they can only be adjudicated by bankruptcy courts if they are "related to" a bankruptcy case. *Ratliff*, at *5 (citations omitted). "Proceedings 'related to' the bankruptcy include . . . causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541 . . . ." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n.5 (1995) (citations omitted).

"Within the context of 28 U.S.C. § 1334, the Fourth Circuit has found that subject matter jurisdiction cannot be divested by subsequent events." *T 2 Green v. J.L. Abercrombie, et al. (In re T 2 Green, LLC)*, 364 B.R. 592, 602 (Bankr. D.S.C. 2007) (citing *Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 626 (4th Cir. 1997) (citing *Freeport–McMoRan, Inc. v. K N Energy. Inc.*, 498 U.S. 426, 428 (1991))); *see also Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 81 (7th Cir. 1995). This means that, if a court *had* subject matter jurisdiction when a case was filed, it *may retain* that jurisdiction even after the occurrence of subsequent events that would have prevented the court from exercising jurisdiction had the case been filed after those events.[1]

The ramifications of the dismissal of a bankruptcy case are listed in 11 U.S.C. § 349. "[C]onspicuously absent from that list is automatic termination of jurisdiction of related cases." *Linkway Inv. Co., Inc. et al. v. Olson (In re Casamont Invs., Ltd.),* 196 B.R. 517, 522

---

[1] For example, if a case was being heard in federal district court due to diversity jurisdiction, and a subsequent change of residence rendered the plaintiff and defendant both residents of the same state, the district court's jurisdiction would be unaffected. *Chapman,* 65 F.3d at 81 (citing *Freeport–McMoRan*, 498 U.S. 426 (1991)). Otherwise, "a litigant who didn't like the way his case was going could . . . engineer its dismissal, allowing him to start over in a different court. Exactly the same danger would be created if the debtor in an adversary proceeding could bounce the proceeding out of federal court by procuring the dismissal of the underlying bankruptcy proceeding . . . ." *Id.*

(B.A.P. 9th Cir. 1996) (quoting *Carraher v. Morgan Elecs., Inc. (In re Carraher)*, 971 F.2d 327, 328 (9th Cir. 1992)). "[A] bankruptcy court can, within its discretion, relinquish jurisdiction over a pending adversary involving state law causes of action between non-debtors when the underlying bankruptcy case is resolved." *T 2 Green,* 364 B.R. at 603 (citing *Chapman*, 65 F.3d at 81). In determining whether a bankruptcy court can properly retain jurisdiction over related proceedings following the dismissal of the underlying bankruptcy case, "several [] circuits have analogized to cases concerning the propriety of district courts retaining jurisdiction over pendent state law claims after federal claims have been dismissed." *Casamont,* 196 B.R. at 522 (citations omitted). "[T]he relationship between an adversary proceeding based solely upon state law and the underlying bankruptcy case from which it arises 'is functionally identical to that between a supplemental proceeding and the federal claim to which it is supplementary.'" *Id.* (citing *Chapman,* 65 F.3d at 81).

The Fourth Circuit has stated that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). Citing the U.S. Supreme Court, it further stated that "[t]he doctrine of supplemental jurisdiction 'thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values.'" *Id.* (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "In order to determine whether a court should retain jurisdiction over a remaining adversary after the resolution of the matter upon which jurisdiction was originally based, courts weigh the following factors: judicial economy, convenience to the parties, fairness, and comity." *T 2 Green,* at 603 (citing *In re Porges,* 44 F.3d 159, 163 (2nd Cir. 1995) (citing *Cohill,* 484 U.S. 343, 350 n. 7 (1988))); *Shanaghan,* 58 F.3d at 110). Put simply,

8

"[t]he decision whether to retain jurisdiction should be left to the sound discretion of the bankruptcy court . . . where the adversary proceeding is pending." *Porges*, 44 F.3d at 162. In determining whether a bankruptcy court abused its discretion in retaining jurisdiction over a "related to" matter, the Bankruptcy Appellate Panel of the Ninth Circuit concluded,

> To the extent a bankruptcy court has jurisdiction to hear a "related to" matter it is based upon its jurisdiction over the underlying bankruptcy case. When the bankruptcy case is dismissed proceedings related thereto are not automatically dismissed, however, the court should always consider that perhaps they should be.

*Casamont*, 196 B.R. at 525. However, dismissal of the underlying bankruptcy case should not be the only reason for declining to retain jurisdiction. As the Bankruptcy Court for the District of Columbia has observed, "it would be an abuse of its discretion to dismiss this adversary proceeding based *solely* upon the prior dismissal of the bankruptcy case." *In re Dawson*, 411 B.R. 1, 17 (Bankr. D.D.C. 2008) (emphasis added).

**B. Analysis**

Federal jurisdiction was proper when the Huffs initially brought this adversary proceeding because it was sufficiently "related to" their bankruptcy case. At the time it was filed, the outcome of the instant adversary proceeding would have more than "conceivably" had an impact on the administration of the Chapter 13 estate. The potential cause of action under the WVCCPA was scheduled in the Huffs' Amended Schedules A/B as an asset and was therefore property of the bankruptcy estate. Not only was it possible that the lawsuit could have been resolved (or substantially completed) prior to dismissal of the underlying case, but if the Huffs had been awarded damages, those funds would have bolstered the bankruptcy estate. This would have had an effect on its administration, which creates "related to" jurisdiction under *Pacor*. Because

9

this Court had subject matter jurisdiction when the case was filed, it is a matter of discretion whether to retain jurisdiction over this proceeding.

"Related to" jurisdiction may be the broadest form of jurisdiction under 28 U.S.C. § 1334, but it is also arguably the weakest. Accordingly, the *Casamont* opinion implies that lingering adversary proceedings post-dismissal initially brought under "related to" jurisdiction should be scrutinized more carefully when jurisdictional questions are presented. The *Casamont* panel reasoned that additional jurisdictional scrutiny was warranted because the court's jurisdiction ("related to") was initially based upon the existence of a pending bankruptcy case under Title 11. The *Casamont* panel's in-depth analysis of judicial economy, convenience, fairness, and comity as applied to the bankruptcy court's retention of the adversary proceeding at issue is consistent with the *In re Dawson* court's line of thinking that dismissal should not occur "solely" based upon dismissal of the main case. This Court has studied numerous examples of courts applying these four factors, both within and beyond the Fourth Circuit, and will now evaluate them individually with regard to this matter.

1. *Judicial Economy[2] and Convenience.*

Judicial economy and convenience to the parties are often analyzed together due to their similarity. Both factors relate to how much time and effort has gone into an adversary proceeding; while judicial economy relates to the interests of the court currently presiding over the case in question, convenience focuses on the efforts already expended by the litigants. In the oft-cited *Chapman v. Currie Motors* decision, Chief Judge Posner colorfully describes the same jurisdictional issues presented by the instant case:

---

[2] "Efficiency in the operation of the courts and the judicial system; esp., the efficient management of litigation so as to minimize duplication of effort and to avoid wasting the judiciary's time and resources." *Judicial Economy*, BLACK'S LAW DICTIONARY (11th ed. 2019).

10

> When the bankruptcy proceeding is dismissed, the adversary claim (when based solely on state law) is like the cartoon character who remains momentarily suspended over a void, spinning his legs furiously, when the ground has been (quite literally) cut out from under him. So tenuous is the federal link that the court ought to have the power to relinquish jurisdiction over the adversary claim if no possible federal interest, including the interest in reducing the cost of the bankruptcy process, would be served by retention.

65 F.3d at 81–82. With the dismissal of the underlying bankruptcy case, this adversary proceeding has become "a dispute of no interest to anyone except the two adversaries." *Id.* at 82. There being no federal interest in the case at hand, the only remaining "interest" that this Court could have in retaining jurisdiction would be the interest of judicial economy.

In the *Porges* case, the bankruptcy court retained jurisdiction largely due to judicial economy because it had "conducted a trial on all contested issues and had issued a decision, and the matter awaited only the filing of findings of fact and conclusions of law and the entry of a judgment." 44 F.3d at 163. Similarly, in *In re Dawson*, the bankruptcy court retained jurisdiction on the basis of judicial economy because the case had been fully tried. *Dawson*, 411 B.R. at 16.

The present adversary proceeding has been before this Court since 2017. However, for much of its pendency, the proceeding was either stayed or retired to the inactive docket. It is therefore this Court's decision that judicial economy does not weigh in favor of retaining jurisdiction over this matter.

The docket contains a relatively small amount of activity for an adversary proceeding, with the parties being generally cooperative throughout the discovery process. There has been no trial, nor has a trial date been scheduled since the case was restored to the active docket. Indeed, a small amount of discovery has been conducted, but the parties have not engaged in vast and multitudinous pre-trial litigation and preparation. In response to the Huffs' point that

11

dismissal of this adversary proceeding would inconvenience parties by requiring them to file in another court, it is important to note that the need to refile in order to continue the pursuit of claims is *always* a result of dismissal; this consideration should be given minimal weight, if any. Because the parties have been cooperative with one another so far, and because this case is still far from being tried, the convenience factor also weighs in favor of dismissal. Refiling in another court would not unnecessarily duplicate the efforts of counsel in the instant case in a way that is inconvenient enough that this Court should retain jurisdiction over a matter with little to no federal interest. Accordingly, the convenience factor does not weigh in favor of retention.

2. *Fairness.*

When evaluating fairness, courts look at whether re-adjudication of a dispute in another forum would inevitably result in unfairness to the litigants. The Court agrees with both parties regarding this factor. The Huffs may choose to refile in state court, and they have conceded in their arguments that this factor does not weigh in favor of retaining jurisdiction or dismissal.

3. *Comity.*[3]

"Needless decisions of state law by federal courts should be avoided as a matter of comity and in order to procure for the litigants 'a surer-footed reading of applicable law.'" *Casamont,* 196 B.R. at 524 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). "Comity requires a bankruptcy court to consider whether the state laws involved are complex such that they ought to be construed and applied by state trial courts and reviewed by state appellate courts." *Id.* While there is a fair amount of precedent from which this Court can draw regarding the WVCCPA claims in this case, 21st Mortgage has brought a statute of

---

[3] "A principal or practice among [courts of different jurisdictions], whereby . . . judicial acts are mutually recognized." *Comity (1)*, BLACK'S LAW DICTIONARY (11th ed. 2019).

limitations defense, which adds another layer of complexity that will involve extensive factual findings by the overseeing Court. It is my belief that West Virginia state courts will have better command over the WVCCPA, the other state law claims, and the applicable state statute of limitations provisions. Therefore, comity weighs in favor of dismissal.

### III.

After consideration of judicial economy and convenience, fairness to the parties, and comity, this Court chooses not to use its discretion to retain jurisdiction over this adversary proceeding. Accordingly,

**IT IS ORDERED** that 21st Mortgage's Motion to Dismiss be, and is hereby, **GRANTED.**

**IT IS FURTHER ORDERED** that this dismissal is **WITHOUT PREJUDICE.**